William J. Mattix
CROWLEY FLECK PLLP
500 Transwestern Plaza II
490 North 31st Street
P.O. Box 2529
Billings, Montana 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 256-4159
Email: wmattix@crowleyfleck.com

John J. Conway, III P56659 *pro hac vice (application pending)*
JOHN J. CONWAY, P.C.
26622 Woodward Avenue, Suite 225
Royal Oak, Michigan 48067
Telephone: (313) 961-6525
Facsimile: (248) 545-1839
Email: jj@jjconwaylaw.com

Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| JENNIFER TAWATER,<br><br>        Plaintiff,<br><br>v.<br><br>HEALTHCARE SERVICE CORPORATION, a MUTUAL LEGAL RESERVE CORPORATION, d/b/a BLUE CROSS BLUE SHIELD OF MONTANA,<br><br>        Defendant. | CASE NO. _____<br><br>**PLAINTIFF'S COMPLAINT FOR ENFORCEMENT OF HER RIGHT TO EMPLOYEE WELFARE BENEFITS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 ("ERISA")** |

## COMPLAINT

Plaintiff Jennifer Tawater, by her attorneys, Crowley Fleck, PLLP and John J. Conway, P.C., and for her Complaint against Defendant Healthcare Service Corporation, Inc., d/b/a Blue Cross Blue Shield of Montana, states as follows:

### I.    NATURE OF THE ACTION AND JURISDICTION

1.    This civil action is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., to compel the Defendant Blue Cross Blue Shield of Montana to provide certain healthcare benefits at the proper coverage levels, and for recovery of damages, costs, and attorney fees incurred because of the Defendant's failure to do so.

2.    Plaintiff Jennifer Tawater ("Plaintiff") is a resident of the State of Montana.

3.    Plaintiff is, and was, at all relevant times, a "participant," as that term is defined by ERISA, in an employee welfare benefit plan insured and/or administered by Defendant.

4.    Defendant Health Service Corporation is a Mutual Legal Reserve Company of which Blue Cross Blue Shield of Montana ("Defendant," or "BCBSMT,") is an unincorporated division. BCBSMT acts as the insurer and administrator for the claims that are subject to this action. Upon information and belief, BCBSMT has its headquarters in the State of Illinois and was, at all relevant

1

times, doing business within this District.

5.     Defendant BCBSMT acted as an ERISA fiduciary determining the coverage level and payment rate for Plaintiff, for certain non-contracted emergency medical transportation health insurance benefits during the periods for which these claims for benefits accrued.

6.     All or a part of the wrongful conduct and/or transactions described herein occurred within the State of Montana, where Defendant BCBSMT is regularly engaged in commerce and conducts business with several employee welfare benefit plans.

7.     Jurisdiction is proper in this Court under 29 U.S.C. § 1132(e)(1) and (f) and 28 U.S.C. § 2201(a).

8.     Venue is proper in this District under 29 U.S.C. § 1132(e)(2).

9.     All documents referenced herein are in the possession of Defendant BCBSMT.

## II.     THE PARTIES

### A.     Plaintiff

10.     Plaintiff Jennifer Tawater is, and was, at all relevant times, a "participant" or "beneficiary," within the meaning of the Employment Income Security Act of 1974 ("ERISA").

11.     Plaintiff was insured under a BCBSMT group health plan at the time

2

that she required emergency medical transportation services.

12.    Plaintiff's health insurance coverage was, at all relevant times, provided through her father's employment with NorthWestern Energy, and its predecessor and successor corporations.

13.    Plaintiff's health insurance coverage is now provided through her own employment with Marcus Daly Memorial Hospital.

14.    On or about July 9, 2014, Plaintiff, suffering from leg pain and fever because of suspected cellulitis and sepsis, was admitted to Mercy Medical Center in Williston, North Dakota.

15.    The condition persisted for a day without improvement and progressed to septic shock.

16.    Unable to adequately treat Plaintiff's condition, a decision was made by attending health professionals to transport her to the closest medical center with resources to adequately treat her condition, Trinity Hospital, in Minot, North Dakota. Trinity Hospital was equipped with an intensive care unit adequate to treat Plaintiff's condition.

17.    Plaintiff had initially requested to be transported to Billings, Montana, however her physicians determined that, in her current condition, she would likely not survive a flight of that length.

18.    Plaintiff required adequate medical treatment of her condition as soon

as possible – expedient treatment was a life or death matter.

19.     Owing to the immediate necessity of treatment, there was no time to arrange for an in-network provider to transport Plaintiff.

20.     Plaintiff was transported by emergency air medical ambulance service from Mercy Medical Center to Trinity Hospital by Guardian Flight, Inc., an emergency medical transport provider (the "Provider").

21.     In July of 2014, following Plaintiff's discharge, Plaintiff began receiving Explanation of Benefit ("EOB") forms from Defendant BCBSMT, which indicated the transport claim had been partially paid and his "Total Responsibility to the Provider(s)" was "$30,659.48."

22.     According to the EOB, Plaintiff was responsible for a large unpaid balance to the Provider, which Defendant BCBSMT had failed to pay.

23.     To the best of her ability, Plaintiff and her authorized representatives challenged the "Adverse Benefit Determination," which left her with a balance due of approximately $30,659.48.

24.     Despite appeals concerning the underpayment, Defendant BCBSMT refused to pay the proper amount for the emergency services and impermissibly shifted the risk under its health contract to Plaintiff, so that she was left owing approximately 70% of the provider's charges.

25.     Defendant BCBSMT was effectively covering only about 30% of the

charges and leaving the balance payable by the patient or the patient's family.

26.     Defendant has denied Plaintiff's claim for appropriate and correct payment, and Plaintiff is deemed to have exhausted all administrative remedies, pursuant to relevant Department of Labor regulations and the Patient Protection and Affordable Care Act. Accordingly, this case is ripe for adjudication, or, alternatively, given Defendant's practice of underpaying emergency air ambulance transports, pursuing further internal administrative remedies is futile.

## B.     Defendant Blue Cross Blue Shield of Montana

27.     Defendant BCBSMT provides insurance and administrative services to health plans throughout this District.

28.     At all relevant times, Defendant BCBSMT acted as the insurer and/or administrator for Plaintiff's employee welfare benefit plan, providing health insurance coverage ("the Plan").

29.     Defendant BCBSMT is a "fiduciary," as that term is defined by ERISA, as it is responsible for determining the eligibility of participants and beneficiaries for benefits under the Plan, under 29 U.S.C. § 1002(21)(A).

30.     Defendant BCBSMT has refused to provide appropriate payment levels under the Plan for emergency air ambulance services.

31.     Defendant BCBSMT and its related entities appear to have established and implemented a policy to underpay claims for air ambulance transport, even

though the terms of its own Plan documents provide payment methodologies which would otherwise favor ERISA plan participants.

32.     Defendant BCBSMT's refusal to provide proper coverage for emergency air ambulance transportation services under the Plan is based on a fundamentally unfair application of the Plan's own payment guidelines.

33.     Defendant BCBSMT's biased application of the Plan's payment guidelines results in a significant portion of the cost of emergency healthcare being shifted back onto the ERISA participants and their beneficiaries for using non-contracted providers.

34.     The situation is compounded by the fact that Defendant BCBSMT has not established a reliable network of contracted air ambulance providers to handle emergency medical transports from remote areas, as occurred here.

35.     Defendant BCBSMT's actions also constitute a violation of those fiduciary duties owed to the Plaintiff to fairly construe and interpret the Plan's language with the "exclusive purpose of providing benefits to participants and beneficiaries," as is required of claims administrators, insurers, and fiduciaries under ERISA Section 404, 29 U.S.C. § 1104(a)(1)(A).

### III.   OVERVIEW OF COVERAGE FOR EMERGENCY AIR AMBULANCE TRANSPORTATION SERVICES

#### A.   Medically Necessary Emergency Air Ambulance Services

36.   A significant segment of the American population resides in areas that may be described as rural or remote local communities.

37.   In certain cases, when an individual's health needs or prescribed medical care cannot be properly addressed locally, a person residing in (or located in) a rural market must be transported by air ambulance to a medical facility able to adequately manage the person's healthcare.

38.   A patient is transported either from the scene of an accident or through an inter-facility transport.

39.   For cases involving inter-facility transports, a patient's attending physician is responsible for making the determination to relocate a patient and for selecting the safest medically necessary form of transportation.

40.   Often, these decisions are made on a life or death basis, and the urgency of the patient's medical condition necessitates the prompt and safe transport from a local medical facility to a major medical center equipped with the type of life saving equipment and specialists to adequately address the patient's symptoms.

41.   To safely transport a patient between two facilities requires a properly equipped advanced life support medical transport aircraft and a team consisting of

trained pilots, emergency medical technicians, and emergency nursing professionals.

42.    The costs to properly equip each individual fixed-wing aircraft for air medical transportation services alone can run into the millions of dollars.

43.    The cost of having an emergency medical transport team on site and ready to act immediately can reach millions of dollars annually as well.

44.    The average price of an emergency air medical flight is $40,000, according to private and governmental data compilations and industry studies.

45.    The price is reflective of the actual operating costs of having a fleet of such emergency medical transportation aircraft at the ready, twenty-four hours per day, seven-days per week.

46.    The price also reflects the reality that air ambulance providers are not self-dispatching and operate on a reimbursement model based upon a payor-mix consisting of private health insurance coverage, government health coverage programs and self-insureds. This means that air ambulance providers do not receive payments that cover their fixed and variable costs for a majority of their transports. This is true for nearly all self-insured, Medicare and Medicaid transports, a segment which constitutes over half of all transports in the industry. The price charged reflects this cross subsidization and is necessary for private air ambulance companies to continue to provide lifesaving services in the areas that need it most.

**B.**    **BCBSMT'S "Allowable Fee" Payment**
         **Methodology for Emergency Ambulance Services**

47.    As a private insurer offering healthcare coverage to the Plan, Defendant BCBSMT represented to affected ERISA plan participants, like Plaintiff, that Defendant would provide payment for "Ambulance Services" at a level of 80% of the "Allowable Fee."

48.    The "Allowable Fee" is a universal term that appears in Defendant BCBSMT's plan language delivered to the Plan, and, by extension, to Plaintiff, and purports to contain a series of payment methodologies.

49.    Under Defendant's "Allowable Fee" coverage provisions, Defendant represents that it will determine payment for non-contracted medical providers in eleven different ways.

50.    Of the payment calculation methods listed in Defendant BCBSMT's Plan, the eight applicable, or arguably applicable, to calculating the "Allowable Fee" for an emergency air ambulance transportation are as follows:

"(1)    **Medicare RBRVS** based is a system established by Medicare to pay physicians for a 'work unit.' The RBRVS value is determined by multiplying a 'relative value' of the service by a 'converter' to determine the value for a certain procedure. The amount of the payment is a fixed rate. Therefore, the amount paid by Blue Cross and Blue Shield of Montana to nonparticipating providers under the Medicare RBRVS system can be considerably less than the nonparticipating providers' billed charge; or

(2)    **Diagnosis-related group (DRGs)** methodology is a system used to classify hospital cases into one of approximately 500 to 900 groups that are

9

expected to have similar hospital resource use. Payment for each DRG is based on diagnoses, procedures, age, sex, expected discharge date, discharge status, and the presence of complications. The amount of payment for each DRG is generally within a fixed range because each patient is expected to use the same level of hospital resources for the given DRG regardless of the actual hospital resources used. Therefore, the amount paid by Blue Cross and Blue Shield of Montana to a nonparticipating providers [sic] under the DRG system can be considerably less than the nonparticipating providers' billed charge; or

(3)     **Billed Charge** is the amount billed by the provider....; or

(4)     **Case Rate methodology** is an all-inclusive rate for an episode of care for a specific condition paid to a facility. The amount of the payment is a fixed rate....; or

                    *                    *                    *

(6)     **Flat fee** per category of service is a fixed payment amount for a category of service. For instance, a category of service could be a delivery, an imaging service, a lab service or an office visit. The amount of the payment is a fixed rate....; or

(7)     **Flat fee per unit of service** fixed payment amount for a unit of service, For instance, a unit of service could be the amount of 'work units' customarily required for a delivery, or an office visit, or a surgery. The amount of the payment is a fixed rate....; or

(8)     **Percent off of billed charge** is a payment amount where a percentage is deducted from the billed charges; or

(9)     **A percentage of Medicare** allowance is a payment amount where a percentage is deducted to the amount that Medicare would allow as payment for the service…."

51.   The only coverage restriction imposed by Defendant BCBSMT for air ambulance service is that the service be medically necessary and that transport be to the nearest facility equipped to address the medical condition.

52.     Under Defendant BCBSMT's coverage language found in the Plan, which it administers and/or insures, Defendant BCBSMT has promised that it will pay a percentage of the "Allowable Fee."

53.     The "Allowable Fee" term is standardized, generic, and used in the coverage documents delivered by Defendant BCBSMT to the Plan and/or to Plaintiff.

54.     Given the coverage provisions, the cost-sharing obligations incurred by the participants and beneficiaries correlate to Defendant BCBSMT's determination of the "Allowable Fee."

55.     The "Allowable Fee" provision's different methodologies can greatly affect (*i.e.*, decrease) the level of coverage that a participant or beneficiary enjoys under the Plan.

56.     Defendant BCBSMT has admitted that it does not pay the Usual, Customary, and Reasonable rates for air ambulance transports.

57.     By letter dated April 25, 2016, in response to a specific inquiry concerning the payment methodology used by Defendant BCBSMT, its General Counsel's office stated:

> I understand that you have requested, on behalf of a number of clients that you represent, documentation on Blue Cross and Blue Shield of Montana's (BCBSMT) use of Usual, Customary, and Reasonable (UCR) rates in its compensation for benefits for out-of-network air ambulance emergency services. **BCBSMT does not use UCR rates in**

11

**its compensation methodology for air ambulance services, but rather, uses an allowed amount for air ambulance compensation**. (Emphasis added).

58.    Defendant BCBSMT's General Counsel's letter further stated that, for the period of May 1, 2015 through May 1, 2016, Defendant BCBSMT's payment methodology was approximately twice the Medicare and Medicaid air ambulance compensation rates.

59.    By using a payment methodology based on a factor of Medicare and Medicaid, as opposed to rates reflecting the fair market, BCBSMT significantly underpaid the Plaintiff's claim (and those of others, as indicated by the General Counsel's letter).

60.    For example, were Defendant BCBSMT to pay the Usual, Customary, and Reasonable fair market rate for air ambulance services, an ERISA participant's cost-sharing obligations would be greatly reduced.

61.    While Defendant BCBSMT's exact payment methodology has not been fully disclosed, it is clear that BCBSMT selected one of the least favorable payment rates, such as paying the claim based on a percentage of Medicare and Medicaid reimbursement rates, thereby greatly increasing the Plaintiff's cost-sharing obligations and liability for unpaid balances.

62.    Under Defendant BCBSMT's terms of coverage, payment for the services is to be made directly to the insured member who, in turn, is then responsible

12

for paying the medical provider, thus signaling to the provider that the insured has personal liability for paying the claim in full.

### C.   Defendant BCBSMT'S Underpayment of Participants' Air Ambulance Claims

63.    Defendant BCBSMT underpays healthcare claims for emergency air ambulance services based upon a selective review of its applicable payment methodologies, always to the financial disadvantage of its members, like Plaintiff.

64.    Defendant BCBSMT is denying claims for plan participants who are seriously ill or even impaired from an occupational standpoint because of their medical conditions and cannot physically or financially challenge the underpayment.

65.    By applying outmoded and outdated payment methodologies to the claims of its participants, Defendant BCBSMT is wrongfully underpaying healthcare claims, as well as dissuading participants from seeking full payment for these claims against their Plans.

66.    Defendant's refusal to provide certain healthcare benefits at the correct and proper payment levels impermissibly shifts the risk of emergency care to plan participants and leaves them facing financial hardship.

67.    Few participants are financially able to meet the full balance due and owing for a claim which is underpaid by Defendant.

68.    Defendant BCBSMT's wrongful refusal to provide coverage has

caused financial damage to Plaintiff, who retains a substantial unpaid balance.

## IV.    DEFENDANT'S VIOLATIONS OF ERISA

69.    ERISA requires every employee benefit plan to provide for one or more named fiduciaries who will have the "authority to control and manage the operation and administration of the plan." ERISA Section 402, 29 U.S.C. § 1102(a)(1).

70.    The Plan delegates certain responsibilities for claims administration to Defendant.

71.    At all relevant times, Defendant was a "fiduciary" within the scope of ERISA through its exercise of discretionary authority, control, and responsibility over implementation and administration of the Plan.

72.    As a matter of internal policy, Defendant has wrongfully denied Plaintiff proper payment for emergency air ambulance transportation.

73.    Defendant has wrongfully underpaid healthcare coverage on a bad faith basis, despite overwhelming evidence showing, among other things, that the amounts it has elected to pay for emergency transportation services are vastly reduced from the proper contractual and fair market rates.

74.    Defendant is misconstruing the terms of the Plan to the disadvantage of Plaintiff.

75.    Defendant has failed to provide any explanation or evidence in support of its decision not to process payment for Plaintiff's claim in accordance with fair

14

market or Usual, Customary, and Reasonable rates.

76.    Defendant's failure to provide evidence demonstrating that its interpretation is in the best interest of Plaintiff, a Plan beneficiary, constitutes a failure to provide full and fair review of the decision to deny benefits, in violation of ERISA Section 503, 29 U.S.C. § 1133(2).

77.    Further, Defendant BCBSMT has orchestrated a policy to unduly hamper the processing of claims in violation of its fiduciary obligations in ERISA Section 404, 29 U.S.C. § 1104 and ERISA Section 503, 29 U.S.C. § 1133, and those regulations promulgated by the Department of Labor at 29 C.F.R. § 2560.503-1. Specifically, Defendant:

      a.    Uses improper procedural denials to functionally bar further inquiry into underpaid claims, such as telling participants that the payment rates are set by Medicare or Medicaid;

      b.    Provides incorrect and invalid reasons for denying full coverage and issues misleading denials; and

      c.    Eliminates favorable evidence from consideration which contradicts Defendant's own internally-generated conclusions as to the proper level of payment.

78.    Defendant BCBSMT has implemented these policies knowing full well that its participants are unable to fight the bureaucracy and are likely to simply drop

their claims rather than exercise their full rights under ERISA.

79.     Moreover, Defendant BCBSMT has excluded relevant pricing data applicable to air ambulance or emergency medical air transportation services from any meaningful consideration of Plaintiff's administrative appeals.

## V.     DEFENDANT'S VIOLATIONS OF THE AFFORDABLE CARE ACT AND THE PUBLIC HEALTH SERVICE ACT

80.     As a plan fiduciary under ERISA, Defendant BCBSMT is duty-bound to follow applicable federal healthcare laws and regulations in plan administration.

81.     The Patient Protection and Affordable Care Act ("PPACA"), 42 U.S.C. § 18001 *et seq.*, expanded the scope of the Public Health Service Act ("PHSA") to group health plans.

82.     Under 29 C.F.R. § 2590.715-2719A ("2719A"), a provision of the PHSA, if a group health plan offers "emergency room coverage," then the insurer "must cover emergency services," as that term is defined elsewhere in the regulation and under the Social Security Act, specifically in 42 U.S.C. § 1395dd.

83.     Under 42 U.S.C. § 1395dd, the term "emergency services" includes all emergency medical transportation decisions made by an attending emergency room physician at the hospital, and specifically provides for the transfer of an emergency room patient out of the hospital whose condition has not yet "stabilized."

84.     An attending emergency room physician may certify the transfer of a

patient who is not yet "stabilized," and must also select the most appropriate method of transfer to another facility if it is deemed medically necessary.

85.   Through incorporating the definitions and protections of 42 U.S.C. § 1395dd concerning emergency services, Section 2719A necessarily encompasses emergency air medical transportation by moving an emergency patient between two facilities, *i.e.* transferring and receiving.

86.    The transportation also includes the dispensing of medically appropriate and necessary life support, while en route from facility to facility.

87.   To avoid exposing insureds to significant balance bill liability incurred because of an emergency beyond their control, federal regulations adopted under the PPACA set forth required payment methodologies for patients who receive emergency medical treatment from out-of-network emergency medical providers.

88.    The relevant PPACA regulations, codified under 45 C.F.R. § 147.138(b)(3), require that the payment rate for claims incurred using out-of-network medical providers, including air ambulance providers, must be calculated under a methodology known as the "greatest of three" payment guideline. Under this guideline, the rates paid for emergency medical services must be the highest of the following:

  1.   The in-network provider negotiated rate;

  2.   The amount arrived at by using the same method the plan

17

generally uses to determine payments for out-of-network services, such as the usual, customary, and reasonable ("UCR") amount; or

3.   The amount that would be paid under Medicare. 45 C.F.R. § 147.138(b)(3)(i)(A)-(C).

89.   Defendant BCBSMT has yet to provide any documentation as to how it arrived at its payment rate, yet it is more likely than not that under a "greatest of three" analysis, the greatest rate would be the Usual, Customary, and Reasonable rate paid to providers providing similar services under similar cost structures.

90.   Defendant BCBSMT did not pay the Usual, Customary, and Reasonable rate for this transport.

## COUNT I -
## ACTION AGAINST DEFENDANT UNDER ERISA
## SECTION 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)
## TO RECOVER HEALTHCARE BENEFITS

91.   Plaintiff re-alleges all preceding allegations.

92.   ERISA imposes a "higher-than-marketplace" quality on healthcare insurers and claims administrators, like Defendant BCBSMT.

93.   Plaintiff was continuously covered under health insurance policies purporting to provide healthcare coverage for certain covered medical expenses under the Plan for the relevant time period.

94.     Plaintiff is entitled to certain healthcare benefits upon supplying proof of a claim incurred under the Plan.

95.     Defendant has underpaid claims for contractually covered medical expenses, specifically, emergency air ambulance transportation services provided by out-of-network providers.

96.     Defendant, as a fiduciary, has failed to properly interpret its own plan language in a manner that is in the best interests of ERISA plan participants and beneficiaries, like Plaintiff, by denying proper coverage for medically necessary healthcare benefits, despite satisfaction of the Plan's underlying eligibility requirements.

97.     In violation of the Plan's terms and ERISA, Defendant's underpayment of emergency air ambulance transportation services is not based on a deliberate, principled reasoning process.

98.     Defendant BCBSMT's Office of General Counsel has advised that, despite the fiduciary obligations applicable to claims administration, it does not use the most favorable payment methodology in resolving the claims of participants.

99.     Defendant BCBSMT has admitted, in writing, that a Usual, Customary, and Reasonable rate is not a factor incorporated in its reimbursement methodology and that it instead relies on a multiple of Medicare and Medicaid reimbursement rates.

100.   Such claims administration has the effect of significantly underpaying the Plaintiff's claim, thereby causing harm to Plaintiff.

101.   Defendant's denial of proper payment is a violation of the Plan's coverage provisions and the protections afforded under ERISA.

102.   Defendant's decision to pay only a portion of the required coverage for air medical transport is both incorrect and unreasonable.

103.   Defendant's resolution of this claim does not comport with the statutory and regulatory requirements of the Patient Protection and Affordable Healthcare Act and the Public Health Service Act to provide payments in line with the Usual, Customary, and Reasonable rates charged by similarly situated emergency medical providers providing like services.

104.   Defendant's decision was also impermissibly influenced by a financial conflict of interest that affected the independence of its decision-making and harmed the Plaintiff.

105.   Accordingly, Plaintiff is entitled to payment of the remaining billed charges for her medical transport minus any cost-sharing obligations under her Plan.

WHEREFORE, Plaintiff requests judgment in her favor against Defendant BCBSMT in an amount to be determined, plus costs, interest, and attorney fees, and any other relief to which Plaintiff is entitled.

## COUNT II –
## ACTION AGAINST DEFENDANT UNDER ERISA SECTION
## 502(a)(3), 29 U.S.C. § 1132(a)(3) FOR EQUITABLE RELIEF

106.   Plaintiff re-alleges all preceding paragraphs.

107.   Plaintiff has the right to "full and fair" review and proper notice of the reasons for the denial of her claimed benefits under ERISA Section 503, 29 U.S.C. § 1133, as well as applicable U.S. Department of Labor regulations and other regulatory protections.

108.   ERISA requires that Plaintiff be afforded a reasonable opportunity for a "full and fair" review of the decision denying her benefits.

109.   Plaintiff was denied her right to a full and fair review of her claim for benefits in one or more of the following ways:

a.   Defendant has never issued a denial letter precisely explaining the relevant coverage provisions by which it is making its claims decision;

b.   Defendant is operating with an inherent structural conflict of interest by acting as both administrator and insurer of Plaintiff's benefits and this has tainted the objectivity of its decision which is required, under ERISA, to be independent and unbiased;

c.   Defendant's internal claims reviewers refused to consider or credit any favorable documentation demonstrating the correct and proper

21

reimbursement rate; and

d.     Defendant repeatedly failed to abide by Department of Labor Regulations governing the administering of group healthcare claims by, among other things, creating internal obstacles to frustrate Plaintiff's ability to pursue her claim and unduly hampering the processing of claims.

110.   Because ERISA requires Defendant to discharge its fiduciary duties with respect to a plan solely in the interest of the participants and beneficiaries and with utmost, undivided loyalty to their interests, equitable relief is necessary, requiring, without limitation, the re-administration of the underpaid claim and the enjoining of the further use of artificially lowered reimbursement rates for participants requiring air medical transportation services.

111.   Because ERISA requires Defendant to discharge its fiduciary and other duties with respect to a plan solely in the interest of the participants and beneficiaries and with utmost, undivided loyalty to their interests, equitable relief is necessary.

112.   This relief includes, without limitation, the re-administration of the underpaid claim.

113.   Defendant's actions as set forth above are in violation of the ERISA statute, its regulations, and Plan.

114.   Defendant has denied coverage without providing beneficiaries and

participants a full and fair review, in violation of those duties imposed by ERISA, and has administered the Plan in such a manner as to unduly obstruct the processing of valid claims.

115. Defendant is further denying Plaintiff an opportunity for a full and fair review by failing to provide evidence or an explanation for its determination that reimbursement rates are set by either Medicare or Medicaid.

116. Because of Defendant's breach of its duties as described above, Plaintiff has been harmed, continues to be harmed, and may be harmed in the future, by the acts or omissions detailed above.

WHEREFORE, Plaintiff requests equitable relief set forth above against Defendant BCBSMT, including injunctive relief, plus costs, interest, and attorney fees, equitable disgorgement, declaratory relief, and any other relief to which Plaintiff is entitled.

## COUNT III –
## ACTION AGAINST DEFENDANT UNDER
## ERISA SECTION 502(a)(2) & (3), 29 U.S.C. § 1132(a)(2) & (3)
## <u>FOR BREACH OF FIDUCIARY DUTY</u>

117. Plaintiff re-alleges all preceding paragraphs.

118. Plaintiff is entitled to a fair and proper administration of her benefit plan by Defendant, a fiduciary under the Plan and ERISA.

119. Defendant is operating under a financial conflict of interest with respect

to Plaintiff which has impermissibly affected the handling of the underlying claim and Plaintiff's rights under 29 U.S.C. § 1133.

120.   Defendant has breached its fiduciary duties to Plaintiff by knowingly underpaying her claim for emergency air ambulance transportation and having in place a claims structure that precluded consideration of other payment methodologies that were favorable to Plaintiff.

121.   Additionally, in underpaying the claim, Defendant failed to take into account the patient balance billing protections set forth in the PPACA and PHSA.

122.   Plaintiff suffered harm as a result.

123.   Defendant should be held liable for restitution, unjust enrichment, and surcharge as a result of breaching its duties to Plaintiff, through the actions alleged above.

WHEREFORE, Plaintiff requests full legal and equitable relief, appointment of an independent fiduciary, and surcharge against Defendant plus costs, interest, and attorney fees, equitable disgorgement, declaratory relief, and any other relief to which Plaintiff is entitled.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests:

1.   An order compelling Defendant BCBSMT to pay Plaintiff forthwith the full amount of his unpaid medical benefits minus any payments made as set forth in

the Plan and any cost-sharing obligations, as well as interest on all unpaid benefits;

2.      An order compelling full disclosure of Defendant's protocols regarding Plaintiff's benefits, and all costs and fees associated with pursuing that accounting;

3.       An award of reasonable attorneys' fees and costs for having to bring this claim; and

4.      Any and all such other legal or equitable relief as may be just and appropriate.


DATED:

                         Respectfully submitted,

                         /s/ William Mattix
                         CROWLEY FLECK PLLP

                         and

                         John J. Conway, III *pro hac vice (app. pending)*
                         JOHN J. CONWAY P.C.
                         Attorneys for Plaintiff